# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0883
DIRECT EMAIL     jmatz@kaplanhecker.com

January 23, 2023

**VIA ECF**

The Honorable Sanket J. Bulsara
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Bulsara_Chambers@NYED.USCOURTS.GOV

   *Re:*  *Richardson v. City of New York*, No. 21 Civ. 3609 (E.D.N.Y.) (LDH) (SJB)

Dear Judge Bulsara:

   Plaintiffs have spent nine months seeking the discovery to which they are entitled in this case. Through emails, letters, and meet-and-confers—as well as offers to narrow their requests—Plaintiffs have sought to engage productively with Defendants. But Defendants have shown little interest in that process. They ignored several of Plaintiffs' communications and replied to most others in a cursory, untimely manner. Promises to follow up have gone unfulfilled. Assurances to check with supervisors have gone nowhere. And basic questions about the scope of Defendants' search and the legal grounds for their position have gone unanswered (apart from boilerplate references to "burden" and "overbreadth"). The upshot is that Defendants have failed to produce whole categories of documents to which Plaintiffs are entitled, particularly with respect to Plaintiffs' municipal liability claims. Plaintiffs therefore have no choice but to seek this Court's intervention and request an order compelling Defendants to meet their discovery obligations.

**BACKGROUND**

   Plaintiffs commenced this case on June 28, 2021 and filed an amended complaint on April 8, 2022. In their Individual Claims, Plaintiffs allege that the Defendant-Officers[1] violated their

---

[1] All capitalized terms herein carry with them the same meaning as in Plaintiffs' First Set of Document Requests to Defendants. Attached hereto as Exhibit A are each of Plaintiffs' First Set of Document Requests to Defendants (the "Municipal Requests"), and as Exhibit B are each of Plaintiffs' First Set of Document Requests to Defendant-Officers (the "Individual Requests"). Relatedly, attached hereto as Exhibit C are the City Defendants' Responses and Objections to Plaintiffs' Requests for Production, and as Exhibit D, the Officer-Defendants' Responses and

constitutional rights through false arrest, illegal seizure, and the use of excessive force (among other violations) at a protest on May 29, 2020 arising from the murder of George Floyd. *See* Compl. ¶¶ 193-226; Am. Compl. ¶¶ 211-55. In their Municipal Claims, Plaintiffs allege that the injuries they suffered were caused by (and undertaken pursuant to) the City Defendants' unconstitutional policies, practices, and customs. *See* Compl. ¶¶ 227-47; Am. Compl. ¶¶ 256-76. Defendants filed an Answer on July 25, 2022 and elected to enter into discovery rather than file a motion to dismiss.

On April 28, 2022, Plaintiffs served discovery requests on all Defendants named in the original complaint. Two months later, Plaintiffs served identical requests on the Defendant-Officers newly named in the Amended Complaint. Defendants responded to Plaintiffs' original requests on June 7, 2022, and to the subsequent requests on September 12, 2022. In their R&Os, Defendants made clear that they intended to produce only limited documents as to the Individual Claims and few (if any) documents related to the Municipal Claims (which they largely ignored).

Following their receipt of Defendants' R&Os, Plaintiffs attempted to engage in a good-faith dialogue about the proper scope of discovery. They sent a detailed, nine-page letter to Defendants on August 2, 2022, responding to Defendants' principal objections and requesting a response by August 25, 2022. Six weeks later—on September 16, 2022—Plaintiffs received a two-page response from Defendants that cited no legal authority, ignored most of Plaintiffs' points, and reiterated boilerplate objections. Plaintiffs responded to Defendants' letter on September 23, 2022, requesting that Defendants provide legal authority to support their objections. Defendants did not respond. On October 11, 2022, the parties held a meet and confer that made little headway. Defense counsel represented during this conversation that she would follow up on several issues concerning both the Individual and Municipal Claims, but she never did. On November 15, 2022, Plaintiffs sent a five-page letter expressing concern about the pace of discovery, noting that Defendants failed to respond to most of Plaintiffs' requests, and seeking to address numerous outstanding issues. Once again, Defendants offered no meaningful response to Plaintiffs' letter.

On December 8, 2022, the Court held a status conference where it asked the parties to offer "a high level" preview of outstanding discovery issues "without necessarily getting into too much granular detail." Dec. 8 Tr. at 3. Based on that discussion, the Court provided general guidance to the parties regarding the proper scope of redactions and potential avenues for discovery related to the Municipal Claims. In light of the conference, Plaintiffs sought another meet and confer, which Defendants finally participated in on December 28, 2022.[2] On this call, the parties reached a few agreements concerning discovery on the Individual Claims, but Defendants otherwise stood by their objections as to most discovery on the Individual Claims and essentially all discovery on the Municipal Claims. Defense counsel committed to follow up on several points and to speak with her supervisor about several issues; consistent with prior experience, Plaintiffs never actually heard back from her on the strong majority of these points. When asked to disclose how she had searched for several categories of documents (for which she said that there was nothing responsive), defense counsel refused to do so, insisting that the scope of her search was "attorney work product."

_____

Objections to Plaintiffs' Requests for Production. Plaintiffs also served a single Supplemental Municipal Request for Production on January 3, 2023, which mirrored Individual Request 8, at Defendants' request, attached as Exhibit E.

[2] Plaintiffs certify that they have in good faith conferred with Defendants in an effort to obtain the sought-after discovery without court action, pursuant to Federal Rule of Civil Procedure 37(a)(1).

On January 3, 2023, Plaintiffs sent a five-page letter memorializing that discussion, noting issues where defense counsel had promised to follow up, offering to narrow several requests, and enumerating points of disagreement. The next day, Defendants responded with a single-paragraph email addressing a mere handful of the issues identified by Plaintiffs on January 3 and suggesting that discovery on the Municipal Claims would be limited to "policy docs." Two days later, defense counsel represented that there are no "academy transcript[s]" for any of the Defendant-Officers. After not hearing from Defendants for another 11 days (despite defense counsel's claim that she would follow up), Plaintiffs sent a three-page letter on January 17, 2023 distilling their concerns as to outstanding discovery and setting forth grounds on which they would move to compel.

Four days before the Court-ordered deadline for Plaintiffs to file this motion, Defendants sent a three-page letter responding to Plaintiffs' correspondence. This letter opened with the surprising assertion (which defense counsel had not made during the December 28 meet and confer or in her emails dated January 4 and 6) that "defendants considered the majority of the below issues resolved as they were not raised at the December 8, 2022 status conference with Judge Bulsara." With respect to the Individual Claims, Defendants largely adhered to their prior refusal to produce additional documents based on generalized assertions of burden and overbreadth. Although Defendants finally agreed to produce performance evaluations from five years prior to the May 29 Protest, they deemed any further information "objectionable," and they refused to provide records "relating to office[r] discipline and/or complaints" unless Plaintiffs somehow managed to "identify by investigation number those investigations [Plaintiffs] believe are relevant." Defendants similarly refused to provide communications from the May 29 Protest apart from the officers' memo books, though they claimed to be willing to confer on this point (despite failing to address it during two previous meet-and-confers and a series of letters where they simply ignored it).

With respect to the Municipal Claims, Defendants reiterated their prior positions, again without any supportive legal authority. In short, Defendants objected to virtually all of Plaintiffs' requests concerning the municipal liability claims, with only three narrow exceptions: (1) body-worn camera footage from May 29, purportedly for all officers present at that protest; (2) a few limited categories of documents related principally to the Individual Claims (one TRI report, memo books, and command logs); and (3) several hundred thousand pages of official "policy and training" documents, which Defendants did not actually describe with any specificity, but which they instead unceremoniously dumped on Plaintiffs in massive, mixed-up, undifferentiated PDFs lacking any table of contents or other readily apparent organization. (These PDFs also contained unexplained but apparently baseless redactions, as well as stacked documents without title pages.)

Following receipt of this letter, and in light of their prior experiences, Plaintiffs concluded that they had no choice but to file a motion to compel. Defendants have made numerous productions concerning the Individual Claims, totaling approximately 320 pages (plus body-worn camera footage), but refuse to make additional productions and persist in applying redactions unsupported by precedent. Moreover, Defendants have made clear their refusal to respond to the bulk of Plaintiffs' requests concerning the Municipal Claims, instead favoring a late-in-the-day document dump of undifferentiated and unexplained policy statements. Given these positions, as well as the broader course of dealings between the parties, Plaintiffs believe that further conferral is futile. Plaintiffs are keen to push this case forward despite Defendants' dilatory conduct.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016). "Courts have long interpreted Rule 26(b)(1)'s scope broadly with respect to relevance . . . in connection with federal § 1983 civil rights claims." *Walls v. City of New York*, 502 F. Supp. 3d 686, 692 (E.D.N.Y. 2020) (collecting cases and applying that rule to a police misconduct case).

Under Rule 34(a), one party may serve on another party a request to produce designated documents or records within their possession, custody, or control. If the recipient party fails to produce documents, the party seeking discovery may move for an order under Rule 37(a)(3) compelling production or inspection. The moving party bears the initial "burden of demonstrating potential relevance of the discovery requested." *White v. County of Suffolk*, 2022 WL 1154839, at *3 (E.D.N.Y. Apr. 19, 2022). Once satisfied, that burden shifts back to the recipient party to "establish that the request lacks relevance, despite the broad and liberal construction afforded the federal discovery rules." *Id.* If the recipient party raises other objections under the Federal Rules of Civil Procedure, they bear the affirmative burden of "showing why discovery should be denied." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, LLC, 314 F.R.D. 85, 87 (S.D.N.Y. 2016).

**ARGUMENT**

I.   <u>Discovery Related to Plaintiffs' Individual Claims</u>

Defendants have produced a decent number of the documents that Plaintiffs requested in connection with the Individual Claims. But the Defendant-Officers have refused to produce four important categories of documents: (1) documents relating to the Defendant-Officers' disciplinary history (Individual Requests 7 & 8); (2) documents related to the Defendant-Officers' deployment and conduct at the May 29, 2020 protest (Individual Request 9); (3) documents relating to the Defendant-Officers' conduct and deployment during the 2020 Racial Justice Protests (Individual Request 11); and (4) documents in which Defendants communicated internally about preparing for and responding to the 2020 Racial Justice Protests (Individual Requests 15-17). Each of these categories of documents is highly relevant to the parties' claims and defenses. *See Thomas v. City of New York*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020) (Bulsara, J.). Defendants therefore bear the burden of sustaining their objections. *See Reid v. Dan Yant, Inc.*, 2018 WL 11453540, at *1 (E.D.N.Y. Jan. 19, 2018) (Bulsara, J.). Rather than attempt to do so, however, they have relied on generalized, boilerplate assertions of burden, disproportionality, and overbreadth. None of these grounds—or any of the scattered additional objections that Defendants have raised—holds water. Accordingly, the Court should affirm that Plaintiffs are entitled to these categories of documents.

A.   **Employment and Disciplinary History (Individual Requests 7 & 8)**

Discovery in § 1983 cases commonly includes documents concerning law enforcement officers' personnel records and disciplinary history. *See Walls*, 502 F. Supp. 3d at 692 (collecting cases requiring production of these materials). Although Plaintiffs have already received some such documents, Defendants have improperly refused to produce the following information:

- **Academy transcripts**, including documents reflecting the NYPD training each Defendant-Officer received at the NYPD Academy (7(a));

- **NYPD disciplinary records**, including letters in officers' personnel files, command discipline, specifications, transfers, and/or warnings or admonishments (7(c)).

  - Plaintiffs have also requested *Giglio* profiles and/or similar information regarding all internal NYPD and CCRB complaints, investigations, and dispositions, including the Police Commissioner's case analysis (7(j)). This includes all underlying documents in connection with any CCRB, IAB, or other investigations into official misconduct, such as complaints, claims, grievances, transcripts, and the outcome of any investigation. (Individual Request 8.)

- **Risk Assessment Information Liability System records** (7(f));

- **Early warning or intervention records** (7(h));

- **Supervisor complaint records and command discipline election reports** (7(i));

- **Documents regarding lawsuits and criminal prosecutions** in which the Defendant-Officers may have been a named party, including the caption, complaint, and record reflecting the disposition of any lawsuits or criminal prosecutions (7(k)-(l)).

Personnel records such as these are "presumptively relevant and discoverable." *Walls*, 502 F. Supp. 3d at 692; *see also Fowler-Washington v. City of New York*, 2020 WL 7237683, at *1-2 (E.D.N.Y. Dec. 8, 2020); *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) ("Plaintiffs are presumptively entitled to discovery of documents on prior complaints and police histories of individual defendants because it could yield relevant information."); *Harper v. Port Auth. of N.Y. & N.J.*, 2006 WL 1910604, at *3 (S.D.N.Y. July 10, 2006) (compelling production of "disciplinary, monitoring, performance, and evaluation records" of individual officers in § 1983 case). That is most obviously true where records involve "complaints of a similar nature, whether substantiated or unsubstantiated" and "could lead to evidence that would be admissible at trial." *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006). But it is also true as to a wider range of records, for reasons summarized by Judge Scanlon in *Walls v. City of New York*. *See* 502 F. Supp. 3d at 692-95; *accord Benitez v. Lopez*, 372 F. Supp. 3d 84, 88 (E.D.N.Y. 2018) (Bulsara, J.) (ordering production of disciplinary files in connection with claims against officers); *Bradley v. City of New York*, 2005 WL 2508253, at *2 (S.D.N.Y. Oct. 3, 2005); *Fountain v. City of New York*, 2004 WL 941242, at *2 (S.D.N.Y. May 3, 2004).

Given the presumptive relevance of these records, Defendants bear a heavy burden in justifying their refusal to produce them. Yet Defendants have not adduced any legal authority or evidentiary points supporting their refusal to provide personnel records, and their claim that it would be unduly burdensome to do so is conclusory and inconsistent with common practice.

Relatedly, Defendants have persisted in applying improper redactions to the employment and disciplinary documents that they have already produced. After the Court indicated that it likely would not tolerate responsiveness redactions should Plaintiffs move to compel, *see* Dec. 8 Tr. at 7, Defendants produced some personnel documents with fewer redactions. But they continued to redact what appears to be substantive information on the grounds that it is "personal information." Most worrisome, Defendants have redacted information about two allegations of misconduct by Defendant Kovalik—whose pepper spray injured Plaintiffs on May 29, 2020—and one of those

allegations of misconduct appears to be "partially substantiated." Given the protective order in this case (ECF No. 36), there is simply no basis for such redactions. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege.").

For these reasons, the Court should compel Defendants to complete their production of the Defendant-Officers' employment and disciplinary history, and should further compel them to do so without redactions unless such redactions are justified by an articulable legal privilege.

**B.      Defendants' Deployment and Conduct at the May 29 Protest**

With respect to the Individual Claims, the parties' claims and defenses turn substantially on the Defendant-Officers' deployment and conduct at the May 29 Protest—both specifically in regards to Plaintiffs and more broadly given their references thus far to the broader circumstances of the protest. Plaintiffs have therefore requested documents and communications concerning the Defendant-Officers' movements on May 29, 2020, the instructions they received, their use of force and arrests, any injuries they sustained, and information about their deployment and command structure. These materials are relevant to analyzing their state of mind while interacting with Plaintiffs, to assessing the reasonableness, excessiveness, and legal basis of their conduct, to ascertaining supervisory and municipal liability, to potentially demonstrating an unconstitutional *modus operandi* at the May 29 Protest, to assessing credibility and possible willingness to violate departmental norms and policies, and to testing Defendants' apparent defense that their conduct was justified in light of the surrounding circumstances of the protest. *See Tracy v. Freshwater*, 623 F.3d 90, 96, 98 (2d Cir. 2010); *Jones v. Parmley*, 465 F.3d 46, 60 (2d Cir. 2006).

Notwithstanding all that, Defendants have limited their productions to the Defendant-Officers' memo books from May 29, plus a single TRI report for Defendant Ciota. There is no tenable view of relevance that supports such miserly productions. And Defendants have declined to articulate any specific account of burden or proportionality that would explain why it would be unduly onerous to produce these materials (nor can we fathom such an argument given that these materials are easily obtained and produced in many police misconduct cases). This Court should thus order them to respond in full to Individual Requests 7(c)-(d), 7(f)-(m), 7(r), and 9(a)-(o).

**C.      Deployment and Conduct at the 2020 Racial Justice Protests**

For reasons similar to those just given, Plaintiffs have also requested documents and communications concerning the Defendant-Officers' actions during the other 2020 Racial Justice Protests, including their assignments at the other protests, information about their commanding officers at those protests, information about officers they supervised at those protests, TRI or injury reports, unusual incident or occurrence reports, and instructions that they received about what equipment should be worn. *See* Individual Request 11. This request is narrower than the requests related to the May 29 Protest itself and seeks information that would illuminate disputed factual questions concerning the Defendant-Officers' conduct. Defendants have refused to produce any documents in response to this request; this Court should compel them to do so, as this request will lead to the production of materials relevant to the parties' claims and defenses, including whether

the Defendant-Officers evinced a *modus operandi* at this series of protests and whether they adhered throughout this series of protests to the City Defendants' disputed policies and practices.[3]

### D.    Communications Among Defendants About the 2020 Racial Justice Protests

In Individual Requests 15, 16, and 17, Plaintiffs requested all communications from May 25, 2020 to the present between and among the Defendant-Officers—as well as any other NYPD personnel—regarding planning for and responding to the 2020 Racial Justice Protests.[4] This request, too, aims at relevant information: understanding how each of the Defendants discussed their preparation for and response to the 2020 Racial Justice Protests may illuminate their specific interactions with Plaintiffs, their state of mind at the May 29 Protest specifically, their *modus operandi* at this series of protests, the tactics they anticipated employing, potential supervisory and municipal responsibility for what occurred at the May 29 Protest, Defendants' own contemporaneous views about the circumstances at the May 29 Protest and whether those circumstances in fact support the defenses that Defendants have indicated they plan to raise, and Defendants' real-time assessments and descriptions of their own conduct. *See Sunderland v. Suffolk Cnty., New York*, 2016 WL 3264169, at *1-2 (E.D.N.Y. June 14, 2016) (finding email communications between defendants fell "within the broad scope of relevant discovery under Federal Rule of Civil Procedure 26(b) in light of Plaintiff's allegations against the Individual Defendants and her *Monell* claim against the County"); *see also, e.g.*, *Terebesi v. Torreso*, 764 F.3d 217, 233-35 (2d Cir. 2014) (discussing officers' planning and communications regarding raid leading to constitutional violations as relevant evidence in evaluating a § 1983 claim).

During the meet and confer on December 28, 2022, defense counsel represented that she had asked each of the Defendant-Officers whether they possessed any communications responsive to these Requests, and that none of them possessed any responsive communications apart from their memo books. This response was surprising, so Plaintiffs' counsel inquired about the general nature of the search that Defendants had undertaken (*e.g.*, did they look for texts, emails, memos, social media posts, etc.). Defense counsel responded by declaring that any information about her search was covered by "work product privilege." This is mistaken: it is standard practice in federal court for parties to describe to each other (and, if needed, to the Court) the steps they took to ensure an appropriate, good faith search for responsive records. *See, e.g.*, *Uni-Sys., LLC. v. U.S. Tennis Ass'n, Inc.*, 2020 WL 8266015, at *6 (E.D.N.Y. July 6, 2020); *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 204 (S.D.N.Y. 2003).

Plaintiffs respectfully request that the Court compel Defendants to describe the scope and nature of their search and, if appropriate, compel Defendants to make further inquiries and produce

---

[3] *See, e.g.*, *Monahan v. City of New York*, 2022 WL 954463, at *12 (S.D.N.Y. Mar. 30, 2022) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."); *Brown v. City of New York*, 2011 WL 4594276, at *2 (E.D.N.Y. Sept. 30, 2011) ("Records concerning the investigation of complaints of a similar nature against a police officer defendant in a section 1983 case may lead to the discovery of evidence relevant to issues of pattern, intent, and absence of mistake.").

[4] Municipal Requests 13 and 14 similarly seek all communications between and among the City Defendants and Defendant-Officers in connection with planning for and responding to the 2020 Racial Justice Protests. Plaintiffs served this request with agreement from defense counsel after she took the unexpected position that the Defendant-Officers had essentially no responsive records.

responsive materials. It is hard to credit that there are no documents or communications responsive to this request apart from memo books. Although Defendants stated on January 19 that they would be willing to further confer with Plaintiffs about this issue, their prior statements and conduct (as well as the strange invocation of work product privilege) lead us to believe that the only credible path forward here is a judicial resolution. *See Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 WL 87245, at \*1 (S.D.N.Y. Feb. 29, 1996) (deciding motion to compel where "encouraging compromise on this discovery dispute" would be an "act of futility" given prior discussions).

### E.    Defendants' Objections Lack Merit

Defendants have raised relevance, overbreadth, proportionality, and burden objections to the requests described above. But they have done so improperly: in defiance of the Federal Rules of Civil Procedure, they have not explained how "each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *John Wiley & Sons, Inc.*, 298 F.R.D. at 186 (S.D.N.Y. 2014) (cleaned up). This failure makes it difficult to explain with particularity why their boilerplate objections are mistaken. Nevertheless, Plaintiffs have sent Defendants a series of detailed letters—with extensive factual and legal argument—explaining why the requests at issue are proper. As we explained above, each of Plaintiffs' requests seeks relevant materials. And objections based on burden and overbreadth are particularly frail in this setting: Defendants made a choice to answer the Complaint rather than to seek dismissal; Plaintiffs' substantive claims require a thorough assessment of the Defendant-Officers' conduct, state of mind, supervision, and adherence to policies and practices; Defendants have clearly suggested defenses that necessitate a thorough review of the underlying events, the full surrounding circumstances, and relevant City policies and practices; discovery of the materials requested by Plaintiffs is standard fare in police misconduct cases; and Defendants appear to have provided far broader discovery from similar sources and categories in the Consolidated Cases. *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 1:20-CV-8924 (S.D.N.Y.), ECF No. 557 (Feb. 28, 2022) (the "Consolidated Cases").

Defendants have suggested that some records about the Defendant-Officers are irrelevant "because they concern allegations of misconduct that are not substantiated; did not result in a finding of misconduct; or are not similar in nature to the allegations herein." But unsubstantiated allegations must still be produced. *See Bradley*, 2005 WL 2508253, at \*1 ("[W]e emphatically reject defendants' contention that 'unsubstantiated' complaint should . . . not be ordered produced."). And Defendants have offered no information or evidence to support their claim that the records are so completely dissimilar from the allegations here as to defeat a finding of relevance for purposes of civil discovery. *See Benitez*, 372 F. Supp. 3d at 88 (Bulsara, J.) ("Presumably, Defendants have the files and lists of substantiated and unsubstantiated allegations; they could have indicated which incidents are 'too tenuous to allow discovery.'"). Indeed, courts have allowed discovery of dissimilar prior allegations and incidents of misconduct where that discovery may still produce relevant information. *See supra* at 5; *accord Bradley*, 2005 WL 2508253, at \*2.

Finally, Defendants have complained that many of Plaintiffs' requests are "compound." But there is no limitation in this District as to the number of Requests for Production, so that is an irrelevant objection. *See* Fed. R. Civ. P. 34; Local Rules of the United States District Courts for

the Southern and Eastern Districts of New York (last updated Oct. 15, 2021) (no limit on number of RFPs); *Smalls v. Bright*, 2011 WL 5419685, at *1 (W.D.N.Y. Nov. 9, 2011) (same).

Accordingly, Plaintiffs respectfully request that the Court order production of materials in response to Individual Requests 7, 8, 9, 11, and 15-17, and Municipal Requests 13-14.

## II.    Discovery Related to Plaintiffs' Municipal Claims

Defendants' discovery deficiencies are far more substantial when it comes to the Municipal Claims. Defendants have simply refused to engage in productive or good faith negotiations on this topic, or to produce any documents in response to the strong majority of Plaintiffs' 33 Municipal Requests. When asked about the Consolidated Cases, they provided limited material but ultimately refused to share many documents from that file that would be relevant here. As a result, Plaintiffs respectfully request that the Court compel compliance with Plaintiffs' requests in their entirety.

### A.    Defendants' Productions Thus Far Are Deficient

To date, Defendants have provided three categories of documents in response to Plaintiffs' Municipal Requests. Separately and together, these documents come nowhere close to satisfying their discovery obligations with respect to the Municipal Claims.

*First*, Defendants have provided all bodyworn camera footage from the May 29 Protest. Although that footage is instructive as to some relevant conduct, it does not reveal patterns and practices of police conduct at the other 2020 Racial Justice Protests, and it does not reveal communications, deployment instructions, training, knowledge by key officials, internal assessments, and other highly relevant information from before and after the May 29 Protest.

*Second*, Defendants have provided one TRI report, memo books for the Defendant-Officers on May 29, 2020, and command logs from the May 29 Protest—many of which relate mainly to the Individual Claims and none of which is remotely sufficient to address broader questions about the City Defendants' policies, practices, and training deficiencies.

*Finally*, Defendants have produced "policy documents." Specifically, they dumped over 250,000 pages of such documents on Plaintiffs just a few weeks ago. In so doing, they did not offer a table of contents, a description of the documents, an explanation of the Requests to which they relate, or any guidance about what these materials are or how they were selected. Instead, they provided a few massive, mixed up, and undifferentiated PDF files containing all manner of documents, some without title pages and others containing substantial redactions. Upon an initial review—which was necessarily limited given the timing of Defendants' production—Plaintiffs believe that these documents are responsive only to Municipal Requests 18 and 28. But, Plaintiffs are not yet able to ascertain whether these documents are in fact sufficient to address even those particular requests (as we are still ascertaining which documents Defendants provided).

There are two key points about this set of policy documents. The first and most important is that they are insufficient to satisfy Defendants' discovery obligations. In a municipal liability case like this one, the parties' claims and defenses commonly rely on a far more substantial and diverse evidentiary base than such official policy materials. Although these sources may indeed be relevant, the parties are entitled to probe the existence and application of policies, practices, customs, and training through additional evidentiary sources, and courts have looked to additional

**KAPLAN HECKER & FINK LLP**

sources in evaluating municipal liability claims. *See Holden v. Port Auth. of N.Y. & N.J.*, 521 F. Supp. 3d 415, 425 (S.D.N.Y. 2021); *Felix v. City of New York*, 2020 WL 6048153, at *3 (S.D.N.Y. Oct. 13, 2020); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 557-58 (S.D.N.Y. 2013).

The second point about Defendants' policy documents is that there is no proper basis for the sweeping redactions Defendants have imposed. Defendants purport to justify those redactions based on a law enforcement privilege (which they also cite in objecting to Municipal Requests 1, 3, 4, 7, 14, 26-30). But they fail to "explain the reasons for nondisclosure with particularity," which is "a threshold showing" in privilege claims. *Edwards v. Nassau Cnty. Corr. Ctr.,* 2022 WL 22736, at *4 (E.D.N.Y. Jan. 3, 2022). "[T]he focus of the law enforcement privilege is to protect information related to investigations," *Floyd v. City of New York*, 739 F. Supp. 2d 376, 380 (S.D.N.Y. 2010), and "to sustain the privilege, a party must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted[.]" *Coleman v. County of Suffolk*, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016) (cleaned up); *see also Conte v. County of Nassau*, 2009 WL 1362784, at *8 (E.D.N.Y. May 15, 2009.

Regardless, Defendants could not support this privilege even if they had asserted it with particularity. "[T]he party asserting the privilege must show that the documents in question contain (1) information pertaining to law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources, (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations." *In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (cleaned up). Here, Plaintiffs have not requested information that could jeopardize investigations or individuals' privacy, and Plaintiffs have expressly agreed that it would be appropriate to redact any information about confidential sources. To the extent Defendants attempt to argue that these policy and training documents are "information pertaining to law enforcement techniques and procedures," courts have repeatedly held that such materials are not protected by law enforcement privilege and are discoverable when Plaintiffs bring *Monell* claims. *See, e.g.*, *Zhao v. City of New York*, 2007 WL 4358470, at *7 (S.D.N.Y. Dec. 5, 2007); *Haus v. City of New York*, 2004 WL 3019762, at *5 (S.D.N.Y. Dec. 29, 2004); *Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York*, 194 F.R.D. 88, 93 (S.D.N.Y. 2000).

Under these circumstances, Plaintiffs' request for information about the policies, practices, customs, and training of police officers several years ago does not implicate any proper application of the law enforcement privilege. Therefore, the Court should order Defendants to provide unredacted version of the "policy documents" they have already produced to Plaintiffs, and should provide that Plaintiffs may seek further relief if Defendants' initial productions prove deficient.

**B.      Defendants Should Be Ordered to Respond to Plaintiffs' Remaining Requests**

Apart from the materials described above, Defendants have failed to produce documents responsive to any other Municipal Requests. There is no justification for their failure.

In the meet and confer process, Plaintiffs focused on sixteen of the Municipal Requests (1-5, 7-12, 23-25, 29, and 30). These requests seek relevant information because they address the City Defendants' planning, training, communication, real-time decision making, internal response, and disciplinary actions related to the 2020 Racial Justice Protests. *See, e.g.*, *Dobson v. Dougherty*, 2018 WL 6321390, at *4 (W.D.N.Y. Dec. 4, 2018) ("[W]here lawsuits involve *Monell* claims,

courts have ordered discovery of documents and information that establish a municipality's policies or customs as well as individual defendants' participation in or reliance on those policies or customs."); *Bailey v. City of New York*, 2015 WL 4523196, at \*3 (E.D.N.Y. July 27, 2015); *MacNamara v. City of New York*, 249 F.R.D. 70, 88-90 (S.D.N.Y. 2008); *Haus*, 2004 WL 3019762, at \*5. But Defendants have "provided no specific information supporting [their] claim" that producing these materials would violate the applicable rules. *Guadalupe v. City of New York*, 2016 WL 675440, at \*2 (S.D.N.Y. Feb. 16, 2016). And as we explain in II.C, none of Defendants' other objections warrants a different conclusion. Therefore, Plaintiffs seek an order to compel discovery as to each of these Municipal Requests:

*Municipal Requests 1-5.* In these requests, Plaintiffs sought all documents and communications (1) concerning Plaintiffs, (2) related to the May 29 Protest, (3/4) created before or after the May 29 Protest, and (5) concerning Plaintiffs' claims and Defendants' defenses in this Action. Because each of these Requests seeks obviously relevant information, Defendants have no conceivable relevance objection, and they have not offered any specific additional objections that would justify their total failure to produce documents in response to these requests.

*Municipal Request 7.* Here, Plaintiffs requested all documents and communications related to the May 29 Protest, including (but not limited to) records regarding arrests, stops, use of force and injuries, activity logs, command logs, instructions to officers, and other documents memorializing the May 29 Protest's sequence of events. These are highly relevant to both Plaintiffs' Individual and Municipal Claims because they would show "the intent and knowledge of NYPD officials in planning the NYPD's response to instances of civil disorder." *MacNamara*, 249 F.R.D. at 88-90; *see also Haus*, 2004 WL 3019762, at \*5. Beyond the "policy documents" noted above, Defendants have produced memo books from each of the Defendant-Officers responsive to Municipal Request 7(e), the dispersal order given during the May 29 Protest responsive to Municipal Request 7(g), and the single TRI Report for Defendant Ciota referenced above, responsive to Municipal Request 7(r). But Defendants have otherwise failed to produce any materials responsive to this request, claiming that the subsections are either irrelevant, unduly burdensome, overly broad, vague, protected by various privacy laws, or all five, without further explanation or argument. For the reasons given above and below, those objections are mistaken, and Defendants should be ordered to comply with this particularly important discovery request.

*Municipal Request 8.* Plaintiffs requested documents sufficient to identify the command, deployment, and instructions provided to every officer assigned or who respond to the 2020 Racial Justice Protests, including the May 29 Protest, as well as various documents that the NYPD completes when an officer or civilian is injured during a police encounter. After Defendants claimed this request was overbroad, Plaintiffs narrowed it to include only information regarding each officer deployed, their assignment, and their commanding and supervising officers for the May 29 Protest. For the rest of the 2020 Racial Justice Protests, Plaintiffs seek only a list of the officers present at each location and TRI reports, officer injury reports, and similar documents. Such documents are narrowly tailored to show how Defendants planned "to respond to civil unrest" in the wake of George Floyd's murder. *MacNamara*, 249 F.R.D. at 90-92 (ordering disclosure of portions of an "After Action" report and "Incident Reports" concerning RNC-related demonstrations); *Haus*, 2004 WL 3019762, at \*5 (ordering the production of unredacted NYPD documents involving planning and deployment of officers); *Larsen v. City of New York*, 2005 WL 1020871, at \*2 (S.D.N.Y. Apr. 28, 2005) (ordering disclosure of "aided reports" concerning injuries suffered at a protest by non-parties). Defendants have not produced documents responsive

to this request, instead objecting on generic grounds and pointing to HIPAA and the New York Criminal Procedure Law §§ 160.50, 160.55, neither of which supports them. *See infra* at 14-15.

*Municipal Request 9.* Plaintiffs requested documents and communications concerning the deployment of SRG officers to the 2020 Racial Justice Protests. Most of the Defendant-Officers are part of SRG, which is governed by its own policies. Given SRG's unique role and guidelines, this Request is relevant to Plaintiffs' claims because it seeks evidence about how the NYPD planned to respond (and did respond) to the May 29 Protest and others in that period. *See MacNamara*, 249 F.R.D. at 90-92; *Haus*, 2004 WL 3019762, at *5. At the December 28 meet and confer, Defendants agreed to check for responsive documents, but in their January 19 Letter they backtracked and raised a volley of generic objections (at this point, they also insisted that the memo books are sufficient to show their communications, even though the memo books do not contain any details about SRG officers' deployment at the 2020 Racial Justice Protests other than the named Defendant-Officers' movements on May 29, 2020).[5] Defendants have not produced any other documents or information related to this request.

*Municipal Requests 10-12.* In this series of requests, Plaintiffs sought documents relating to stops, arrests, and the use of force at the 2020 Racial Justice Protests. These documents would illuminate whether (and if so, how) officers at the 2020 Racial Justice Protests implemented the NYPD's written policies; they would also illuminate whether they violated protesters' rights by either complying with or ignoring those policies. *See, e.g.*, *Monahan*, 2022 WL 954463, at *12 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."); *Jackson v. County of Nassau*, 2010 WL 335581, at *14 (E.D.N.Y. Jan. 22, 2010) (relying on arrest records in granting motion for summary judgment to defeat claim of alleged discriminatory policy or custom); *Holden*, 521 F. Supp. 3d at 428 (denying summary judgment after plaintiffs "point[ed] to the 'idiosyncratic' uptick in 2014 Public Lewdness arrests in connection with" challenged policy). Defendants stated at the December 28 meet and confer that they would confirm whether similar documents were produced in the Consolidated Cases, but have since raised generic objections, as well as meritless privacy law arguments (addressed below).

*Municipal Requests 23-25.* Finally, Plaintiffs requested documents and communications concerning complaints about police conduct and occurrences resulting in an investigation by the NYPD, CCRB, DOI, or IAB arising out of the 2020 Racial Justice Protests. *See, e.g.*, *Floyd*, 739 F. Supp. 2d at 379 (ordering production of documents from NYPD IAB investigations relating to stop-and-frisk allegations and holding plaintiffs had a "compelling need" for the documents because they are "probative" to the extent they "corroborate or contradict" officers' allegations about city policy and practice); *MacNamara*, 249 F.R.D. at 90-91 (ordering production of after-action and incident reports concerning RNC-related protests). When Defendants raised an overbreadth objection, Plaintiffs suggested narrowing these requests to complaints and investigations relating to the specific policies and practices at issue in this case. Defendants have not responded to this proposal and instead maintain that these Requests are inappropriate. They are mistaken: the narrowed version of Plaintiffs' requests identifies relevant material as confirmed

---

[5] Defendants have not produced memo books for any other officers, or for the Defendant-Officers beyond the May 29 Protest.

by common sense and the cases cited above. *See White*, 2022 WL 1154839, at \*4 (granting discovery of "internal affairs files" of non-defendant officers).[6]

### C. Defendants Have Failed to Support Their Generalized Objections

Defendants object to most of Plaintiffs' Municipal Requests on the grounds that they are unduly burdensome, overly broad, or disproportionate to the needs of the case. But Plaintiffs are "fully entitled to assert claims of municipal liability and to take discovery to support those claims." *Guadalupe*, 2016 WL 675440, at \*1. And here, Defendants have failed to offer evidence or any specific information meant to carry their burden of "establish[ing] that the discovery sought is disproportionate." *Guadalupe*, 2016 WL 675440, at \*2; *Reid*, 2018 WL 11453540, at \*1; *Norton v. Islip*, 2018 WL 5017744, at \*10 (E.D.N.Y. Oct. 16, 2018); *Walls*, 502 F. Supp. at 696 n.8.

Regardless, Defendants' objections are facially meritless. As the Court has suggested, the fact that many of the records Plaintiffs seek here have already been produced in the Consolidated Cases "moots out an objection of over-breadth or burden because the idea is, there's not a lot of burden to taking the CD" and copying it. Dec. 8 Tr. at 7; *see also* Aug. 10 Tr. at 4-5 ("[S]ome of the typical arguments that are typically made to object to discovery from other cases. . . don't really carry a lot of weight because it's really the cost of reproduction from which you can cost shift or fee shift . . . ."); *see also Guadalupe*, 2016 WL 675440, at \*2 ("The City further maintains that the *Monell* discovery is duplicative of what it produced in a class action. But this argument cuts the other way. Having already assembled responsive information for that case, it should be easier for the City to identify a subset of documents for production here.").

To date, it appears from the public docket that Defendants have produced (or will produce) documents in the Consolidated Cases that would be responsive to most of the Municipal Requests at issue here. In particular, in the Consolidated Cases, Defendants appear to have agreed to produce documents that would be responsive to Plaintiffs' Municipal Requests 7(a)-(x), 9-14, 23, and 25. Assuming that appearance is correct—and Defendants have declined to engage with us on these matters—that would leave only Plaintiffs' Municipal Requests 1-5 (which seek documents and communications specifically concerning Plaintiffs and this lawsuit), 7(y) (which requests specific documents relating to the May 29 Protest), and 8 (which Plaintiffs agreed to narrow).

---

[6] In addition, Plaintiffs requested all documents concerning TARU and SRG's formation, operations, and role in demonstrations or protests. Defendants produced some responsive policy and training documents, and represented in their January 19 Letter that they are continuing to search for additional responsive documents in response to Municipal Requests 29-30. Plaintiffs also requested all documents relied upon in drafting the December 2020 Corporation Counsel Report Pursuant to Executive Order 58 (June 20, 2020), the December 2020 DOI Report Investigation into NYPD Response to the George Floyd Protests, and the New York State Office of the Attorney General's Preliminary Report on the New York City Police Department's Response to Demonstrations Following the Death of George Floyd in response to Municipal Requests 19-21. In their January 19 Letter, Defendants have represented they are searching for these documents and will produce them, if they exist. Plaintiffs reserve their right to seek to compel these documents, in the event Defendants fail to do so in a timely manner.

In particular, it appears that Defendants agreed to produce the following documents in the Consolidated Cases that would be responsive to several of Plaintiffs' Municipal Requests:[7]

- **Documents Responsive to Plaintiffs' Municipal Requests 7(a)-(j) and (r)-(x)**: Documents including intelligence reports, threat assessments, information compiled and/or reviewed in advance of and during the protests, as well as communications, tactical decisions, or other directives, social media and news clips, information regarding officers' deployment, command logs, unusual occurrence and mass arrest reports, TRI and similar reports, documents sufficient to identify arrests and use of force, and AIDED reports and related documents, related to the 2020 Racial Justice Protests;

- **Documents responsive to Plaintiffs' Municipal Requests 7(k)-(o), and (p)-(q)**: Video and audio recordings from the 2020 Racial Justice Protests, including TARU videos, bodyworn camera videos, and Aviation Unit videos, as well as documents regarding the deployment of TARU related to the 2020 Racial Justice Protests;

- **Documents responsive to Plaintiffs' Municipal Request 9**: Communications relating to the decision to deploy officers from the SRG, and instructions or directives provided to the SRG Officers;

- **Documents responsive to Plaintiffs' Municipal Requests 10-12**: Documents sufficient to identify all persons stopped, arrested, or on whom force was used by officers during the 2020 Racial Justice Protests, including those who received summonses and DATs;

- **Documents responsive to Plaintiffs' Municipal Requests 13-14**: Documents and communications related to intelligence reports, threat assessments, and information compiled in advance of and during the protests, as well as officers' planning for policing 2020 Racial Justice Protests; and

- **Documents responsive to Plaintiffs' Municipal Requests 23, 25**: Documents concerning any incidents currently or formerly under investigation or referred for investigation by the NYPD, including the IAB, and/or the CCRB, stemming from the 2020 Racial Justice Protests.

Given the overlap between many of the requests here and the discovery that has already occurred in the Consolidated Cases, Defendants' objections are particularly weak. And in light of the weakness of those objections, Defendants' argument that producing the remaining categories (which are more unique to Plaintiffs' case) should also be considered frail, as the total burden on Defendants in this case is within reasonable bounds for a *Monell* claim arising from a serious, repeated, and nationally reported series of violent abuses by New York City law enforcement.

### D.      State Law Third-Party Privacy Statutes Do Not Prohibit Discovery

Defendants object to many of the Municipal Requests on the grounds that production of relevant documents would violate state law under NYCPL §§ 160.50 and 160.55 (or would instead

---

[7] Consolidated Cases, ECF No. 557 (May 26, 2022).  This docket entry includes an extensive chart explaining the defendants' responses, objections, and prior and anticipated productions.

violate HIPAA).[8] But "[i]n cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law." *Shomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 141-42 (S.D.N.Y. 2014). As such, "[f]ederal courts can and commonly do order production of documents sealed under Section 160.50" because "[w]hen a plaintiff asserts federal claims the state sealing statute does not govern." *Id.* (collecting cases); *see also MacNamara*, 2006 WL 3298911, at *8 (ordering production of unredacted arrest records in connection with protest claims, noting "state privilege rules should not be permitted to frustrate the important federal interests in broad discovery and truth-seeking"). The court in the Consolidated Cases thus granted an Order dictating that the parties "shall not be subject to the statutory sealing requirements of CPL §§ 160.50 and 160.55 as to sealed records regarding stops and/or arrests and/or prosecutions of . . . non-parties." Order at 2, ECF No. 162 (June 7, 2021).[9]

Similarly, HIPAA is not implicated by the limited NYPD records that Plaintiffs seek. *See Larsen*, 2005 WL 1020871, at *1-2 (rejecting objection based on HIPAA and ordering production of Aided reports, among other discovery, because they "are police information and do not contain medical records of the individuals injured on the scene"); *cf. Cooks v. Town of Southampton*, 2015 WL 1476672, at *10 (E.D.N.Y. Mar. 31, 2015) (rejecting objection based on HIPAA and finding confidentiality order sufficient to protect any confidential information contained in documents). Defendants' unexplained invocation of HIPAA does not justify their objections to discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order compelling Defendants to produce documents and communications in response to Individual Requests 7-9, 11, and 15-17, as well as Municipal Requests 1-5, 7-14, and 23-25. Plaintiffs further respectfully request that this order require Defendants to produce unredacted copies of all documents previously produced, with any redactions limited only to affirmatively demonstrated and legally proper privileges.

Respectfully submitted,

Joshua A. Matz
Raymond P. Tolentino
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
Fax: (212) 564-0883
jmatz@kaplanhecker.com
rtolentino@kaplanhecker.com

---

[8] Objections based on NYCPL §§ 160.50 and 160.55 were raised in response to Individual Requests 1, 12, 13, and 14, and Municipal Requests 1, 7, 8, 10, 11, 12, 23-27, 32, and 33. Defendants raised objections based on HIPAA for the first time in their January 19 Letter.

[9] Letter, Consolidated Cases, ECF No. 161 (June 4, 2021); Order, *id.*, ECF No. 162 (June 7, 2021).

Sean Hecker
Alexandra Conlon
Anne R. Yearwood
Molly K. Webster
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
aconlon@kaplanhecker.com
ayearwood@kaplanhecker.com
mwebster@kaplanhecker.com

*Counsel for Plaintiffs Diana C. Richardson
and Zellnor Y. Myrie*